IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| 520 S. MICHIGAN AVENUE ASSOCIATES, LTD. d/b/a THE CONGRESS PLAZA HOTEL & CONVENTION CENTER ) ) ) ) | |
| v. ) | Case No. 10 C 1395 |
| ) | |
| UNITE HERE National Retirement Fund, ) | Judge Kennelly |
| ) | |
| Defendant. ) | |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff, 520 South Michigan Avenue Associates, Ltd., d/b/a The Congress Plaza Hotel & Convention Center ("Congress Plaza Hotel"), pursuant to Fed. R. Civ. P 56(a) and hereby presents its memorandum of law in support of its motion for summary judgment.

I.  **UNCONTESTED MATERIAL FACTS.**[1]

A.  *The Parties and Jurisdiction.*

The UNITE HERE National Pension Fund ("NRF") is a multiemployer pension benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA") §§3(2) and (37), 29 U.S.C. §§1002(2) and (37) and is maintained by contributing employers who have entered into collective bargaining agreements with various local unions. 56 Stmt. ¶1. The Congress Plaza Hotel, a limited partnership doing business as "The Congress Plaza Hotel and

---

[1] The facts set forth herein are derived from Plaintiff's Rule 56.1 Statement of Material Facts ("56 Stmt.") filed simultaneously with this memorandum. The Congress Plaza Hotel has filed this cause of action seeking to enforce the arbitration award and the fund has filed a counterclaim seeking to vacate the award. Both claims should be decided on the parties' cross motions for summary judgment.

Convention Center" in Chicago, Illinois, is an Employer within the meaning of 29 U.S.C. §1002(5) engaged in commerce and affecting commerce under 29 U.S.C. §1002(11) and (12). 56 Stmt. ¶¶2, 3. This action to enforce the February 27, 2010 arbitration award rendered by Mark L. Irvings ordering the NRF to rescind its partial withdrawal liability assessment arises under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§1001-1453, with jurisdiction proper under ERISA §§ 4221(b)(2) and 4301(c), 29 U.S.C. §§1401(b)(2), and 1451(c) and venue being appropriate under ERISA §4301(d), 29 U.S.C. §1451(d). 56 Stmt. ¶¶ 4-6, 11.

B.  *June 2003 Strike*.

For some period of time prior to 2002, the Congress Plaza Hotel was a party to a collective bargaining agreement with HEREIU, Local 1, which required contributions on behalf of the bargaining unit employees to the HEREIU Pension Fund ("Pension Fund"). 56 Stmt. ¶14. On December 31, 2002, the collective bargaining agreement between Congress Plaza Hotel and HERE Local 1 expired and following its expiration, the parties continued negotiations working under the terms of the expired contract and during which time, the Congress Plaza Hotel continued to make all required contributions to the Pension Fund. 56 Stmt. ¶¶12, 16. Since June 15, 2003, Congress Plaza Hotel and the Union have been engaged in an ongoing labor dispute where the Union has been on strike at Congress Plaza Hotel's location and the parties have met periodically in collective bargaining sessions. 56 Stmt. ¶¶13, 17, 34. Since the start of the strike, the hotel has utilized replacement workers provided by temporary staffing companies whose contracts with the hotel specified that the workers were employees of and paid by the temporary staffing companies, which were entirely responsible for the employees' compensation. 56 Stmt.

¶18. Congress Plaza Hotel has continuously held the right to cancel its contracts with the various staffing companies without notice and no pension contributions have been made on behalf of these workers. 56 Stmt. ¶19. The hotel has not hired anyone to permanently replace any striker, nor has it directly hired any temporary employees. 56 Stmt. ¶20. The Union has never filed an unfair labor practice charge relating to the hotel's use of employees of outside contractors. 56 Stmt. ¶21.

C.      *2004 Overturned Multi-Million Withdrawal Liability Assessment*.

On January 15, 2004, the Pension Fund informed the Congress Plaza Hotel that it had been assessed $2,670,763 in liability for a complete withdrawal based upon the hotel's failure to provide an acceptable collective bargaining agreement prior to December 31, 2003 in violation of the fund's twelve month plan rule. 56 Stmt. ¶23. Arbitrator Jaffe ruled in his May 20, 2005 opinion that the labor dispute exception provision under Section 4218 of ERISA, 29 U.S.C. §1398, prohibited the withdrawal liability assessment and that a labor dispute existed between hotel and Local 1 that on January 1, 2003 and continued through the date of his award.  56 Stmt. ¶¶24-25.  Arbitrator Jaffe also found that even in the absence of the labor dispute exception, the trustees' determination that there had been a permanent cessation of the obligation to contribute was unreasonable and that there was a mere temporary cessation due to an ongoing labor dispute. 56 Stmt. ¶26. On January 27, 2006, United States District Judge James Holderman enforced Arbitrator Jaffe's arbitration award. 56 Stmt. ¶27; Jt Ex. 12.

On June 22, 2006, the Pension Fund and the Congress Plaza Hotel entered into a settlement agreement of the first withdrawal liability case whereby pension contributions for cross over employees working after January 1, 2004 were paid by way of deduction from the

3

cumulative interim withdrawal liability payments the hotel made during the first arbitration with the net balance being returned to the hotel. 56 Stmt. ¶28. In January, 2007, the Congress Plaza Hotel and the union entered into an agreement whereby the hotel agreed to pay the increased contribution rates for cross overs through December 31, 2007. 56 Stmt. ¶29. As many as thirty bargaining unit employees have crossed the picket lines and returned to work since the strike began with the hotel making all required pension contributions on behalf of these workers at the increased contribution rates specified by the fund, consistent with its obligation under Section 8(a)(5) of the National Labor Relations Act. 56 Stmt. ¶¶22, 33.[2]

D.  *2007 Fund Merger*.

Effective September 30, 2007, the Pension Benefit Guaranty Corporation (PBGC) approved a merger between the Textile Workers Pension Fund, funded at 104%; the HERE Local 54 Plan, funded at around 95%; and the Pension Fund, funded at 40%; into the NRF, which was funded at approximately 98%. 56 Stmt. ¶31. Under the merger agreement, a two part withdrawal liability calculation for the Pension Fund was approved. In the first part, in the event of a withdrawal, the previous unfunded liability of one of the Pension Fund employers would be amortized at 5% each year for the first ten years, and 50% in the eleventh year. The second part called for an assessment of a proportionate share of the NRF's unfunded vested liability which was accrued post-merger. 56 Stmt. ¶32.

Richard Rust is the manager of NRF. 56 Stmt. ¶36. Throughout his tenure, Rust was aware that Local 1 had been on strike against Congress Plaza Hotel since 2003 and that the strike

---

[2] An employer who refusing to pay the minimum contribution rates set by the fund would be expelled from the fund and assessed withdrawal liability. 56 Stmt. ¶30.

was continuing. He testified at the arbitration hearing that he "no clue" of the existence of the "labor dispute exception" under the withdrawal liability rules. 56 Stmt. ¶36; Exhibit D, pp. 115-16.  As fund manager, Rust is delegated with the authority to assess, demand, and collect partial withdrawal liability and initially directed an investigation whether the hotel had incurred the liability. 56 Stmt. ¶37.

E.     *2009 Overturned Multi-Million Withdrawal Liability Assessment.*

On February 12, 2009, Rust notified the Congress Plaza Hotel that the Board of Trustees of the NRF had determined that the hotel had partially withdrawn based on a 70% decline in the contribution base units for the plan year and the two previous plan years (2006, 2005 and 2004) and had incurred a $2,440,445 liability. 56 Stmt. ¶38; Jt. Ex. 6. Under 20 U.S.C. §1385, the 70% decline is measured from the average of the two highest contribution base units during the five years preceding the three year testing period.  The NRF assessment determined the hotel had withdrawn in 2004. 56 Stmt. ¶39. Payment of the partial withdrawal liability was to be made in twenty-nine quarterly installments of $105,296, plus a final smaller payment, beginning April 13, 2009.  56 Stmt. ¶40.

Under the MPPAA, there are two types of partial withdrawal liability assessments. The first occurs where there is a "70-percent contribution decline" (29 USC 1385(a)(1)), the basis of the assessment here, with the second occurring when "there is a partial cessation of the employer's contribution obligation." 29 USC 1385(a)(2). Here, the NRF compared the hotel's contributions in the testing years of 2006, 2005, and 2004, to the hotel's average contributions in the two highest of the five year period preceding these testing years: i.e., 1999 through 2003. The highest two contribution years in the five year testing period were determined to be 1999 and

2000, and after averaging these contributions and comparing it to the three testing years, the NRF determined that there was a greater than seventy percent decline for each of the three testing years. Jt. Ex. 6, p.2. However, because Arbitrator Jaffe had earlier ruled that 2004 and 2005, two of the three years used as testing years, were years that the hotel was involved in a labor dispute (Jt. Ex. 1, p. 20) and were exempt from assessment under the labor dispute exemption (29 USC §1398), the hotel argued that *res judicata* and collateral estoppel barred the NRF from assessing withdrawal liability using these two years as testing years. Jt. Ex. 7. Following exhaustion of administrative appeals and timely demand for arbitration, this proceeding follows. 56 Stmt. ¶¶ 41-43; Jt. Ex. 7-10.

## II.   ARGUMENT.

*A.   Introduction*.

Despite the fact that in a final ruling Arbitrator Jaffe had previously ruled that two of the three years the NRF now uses to assess a $2,440,445[3] partial withdrawal liability were exempt from withdrawal liability assessment because they were years involving a labor dispute, the NRF continues to ignore this adjudicated finding and press on with a claim that insists that not only was the first arbitrator wrong, but so too is the second. Without so much as a single legal authority supporting its position, the NRF claims that the hotel "has not suspended contributions" as that phrase is used under the MPPAA's labor dispute exemption since the hotel continues to pay on behalf of all workers it is obligated to pay. Jt. Ex. 8. Rather, the fund argues that the MPPAA's labor dispute exemption has no application since the assessment here involves a

---

[3] Even though this withdrawal was assessed as a "partial" withdrawal liability assessment, the previous assessment deemed a "complete" withdrawal was for $2,670,764.43, (Jt. Ex. 1, p. 7), an approximate $200,000 difference.

"reduction," a suspension of payments. 56 Stmt., **Exhibit D**, p. 26; Jt. Ex. 8.  Such an argument if adopted would result in the labor dispute exemption never being rendered applicable in either a partial or complete withdrawal liability assessment since in every labor dispute involving employees walking off the job, there always to be a "reduction" in the form of a complete suspension (if all employees remain on strike) or a partial suspension (if less than all employees go on strike as in the case here). Under the fund's interpretation, the labor dispute exemption would become inapplicable if just a single striker crossed the picket line and returned to work. It is worthy to note that in 2004, prior to the first withdrawal liability assessment, the hotel had "reduced" its payments by paying only on behalf of the cross-overs (Jt. Ex.1, p. 2, ¶¶4, 5, 10, 18-19) yet the predecessor pension fund did not then characterized the payments as a "reduction" which barred the application of the labor dispute exemption. The arbitrator was correct in construing the 70% decline as a "suspension" of payments that was exempt from assessment under the MPPAA's labor dispute exemption. This exemption is an important safeguard provided by Congress to specifically prevent funds from utilizing the power to assess withdrawal liability as a tactical tool to benefit or aid the union during the strike which the fund her is doing.

B.      *Standard of Review*.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is proper where there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986); *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001).

Under ERISA §4421(b)(2), the Congress Plaza Hotel is authorized to bring this action to enforce the arbitration award. 29 U.S.C. §1401(b)(2). The arbitration decision is enforceable in United States Courts in the same manner as an arbitration proceeding under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (see 29 U.S.C. §1401(b)(3)) and there is a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct. 29 USCS § 1401(c). General appeals to "public policy" do not permit a court to upset an arbitral award. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002)(citations omitted). Nor is there judicial review of arbitration awards for legal error. *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 554-55 (7th Cir. 2002). The standard of review of the arbitrator's resolution of mixed questions of law and fact is the clearly erroneous standard which is considered the functional equivalent of "clear preponderance of the evidence" standard." *Chicago Truck Drivers, etc. v. Louis Zahn Drug Co.*, 890 F.2d 1405, 1411 (7th Cir. 1989). "Like many other things in life," arbitration of disputes involves trade-offs. *Digangi Plumbing Co. v. Sullivan*, 2007 U.S. Dist. LEXIS 54986, 14 (N.D. Ill. 2007). "On the plus side, the parties . . . may gain the benefit of a specialized tribunal that understands 'the customs and lore of an industry first-hand.' [Citation omitted]. They also may gain the possibility of resolving their dispute at lower expense than litigation in court often entails. On the flip side, however, the parties to an agreement to arbitrate 'lose . . . the right to seek redress from the courts for all but the most exceptional errors . . . .'" *Id*. [citation omitted].

C.   *Withdrawal Liability*.

ERISA, as amended by the MPPAA, 29 U.S.C. §1001, *et seq.*, provides that a pension

plan may assess a withdrawal liability when an employer withdraws from a multi-employer pension plan. *Bridge v. Wright Indus.*, 995 F. Supp. 922, 926 (N.D. Ill. 1998). Typically, this withdrawal liability serves as a penalty to employers for withdrawing from a plan. *T.I.M.E.-DC, Inc. v. I.A.M. Nat'l Pension Fund*, 597 F. Supp. 256, 258 (D.D.C. 1984). The dispute in this case centers on the NRF's assessment of a partial withdrawal liability based on the hotel's "70-percent decline" in contributions (29 USC §1388) and whether such an assessment based on reduced contribution volume during a strike is appropriate under the "labor dispute" exemption contained in the MPPAA.

The "labor dispute" exemption of the MPPAA provides in relevant part that "[n]otwithstanding any other provision of this part, an employer shall not be considered to have withdrawn from a plan solely because– . . . (2) an employer *suspends* contributions under the plan during a labor dispute involving its employees. 29 USC §1398 (emphasis added). The labor dispute exception is designed to protect an employer from the threat of withdrawal liability during a strike and to prevent a fund from interfering with the course of labor disputes. *New York Teamsters Retirement Fund v. McNicholas Transportation Co.*, 848 F.2d 20, 22 (2d Cir. 1988). See, also, *Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 126 (D.D.C. 1984) (where "cessation . . . was precipitated by a labor dispute,"); *I.A.M. National Pension Fund, Benefit Plan C v. Schulze Tool & Die Co.*, 564 F. Supp. 1285, 1295 (N.D. Cal. 1983) (cessation "because of a labor dispute").

D.  *The Arbitrator's Finding That The "Reduction" In Contributions Was A "Suspension" Exempt From Assessment Is Not Clearly Erroneous.*

The Congress Plaza Hotel and Local 1 have been in negotiations for a new collective

bargaining agreement since September 2002 and workers have been striking and picketing in front of the hotel since June 2003. Multiple negotiation sessions have taken place yet the parties have still been unable to reach an agreement. The NRF stipulated during the arbitration that the Congress Plaza Hotel and Local 1 have been in a "labor dispute" since June 15, 2003 which continues through today's date and that Local 1 employees of the hotel have been on strike at the Congress Plaza Hotel's location since June 15, 2003. These events and stipulations support the arbitrator's finding that despite its length, the labor dispute is genuine and on going. 56 Stmt. ¶¶47-51.

The Arbitrator also found that the NRF's claim that the 70% decline in contributions was not a result of the strike was not persuasive, the decline was directly caused by the strike, and the suspension of contributions cannot form the basis of either a complete or partial withdrawal under the labor dispute exception, 29 U.S.C. §1398. 56 Stmt. ¶55. This finding of fact is presumed correct and nothing within the record undermines it.

As explained above, the NRF attempted to avoid the express prohibition contained within the labor dispute exception by characterizing the decline in the hotel contributions as a "reduction," not a suspension, in payments. However, there is absolutely no case law or other authorities that the NRF can present that will support its position. As the hotel points out above, adopting such a position would result in the labor dispute exemption never having application since in every withdrawal liability assessment where a labor dispute is involved there is either a complete or partial "reduction" of contributions. However, the statute is quite clear. "[A]n employer shall not be considered to have withdrawn from a pension plan, and hence have incurred withdrawal liability under the [MPPAA], if the employer merely 'suspends

contributions under the plan during a labor dispute involving its employees.' 29 U.S.C. § 1398."

*T.I.M.E. D.C., Inc. v. I.A.M. National Pension Fund*, 597 F. Supp. 256, 262 (D.D.C. 1984). In

*Time DC*, the court also agreed with the arbitrator's decision in this case:

> The Court finds, however, that under a fair reading of the statute an employer's failure to make contributions during an on-going labor dispute is to be characterized as a <u>suspension rather than a termination</u> of payments. Furthermore, even if defendant's position had merit, clearly TIME-DC did not permanently cease making contributions as of March and April 1982. As defendant's own records reflect, TIME-DC made contributions after April 1982 for the one mechanic it had working at its Los Angeles facility. Despite the defendant's efforts to assert that these were not "meaningful" contributions, the fact remains that TIME did not permanently cease making all contributions as of March and April 1982.

*T.I.M.E.-DC*, 597 F. Supp. at 263, f.n.4. Just as when Arbitrator Jaffe ruled in 2005 that the

reduction in payments could not be used as a basis for assessing withdrawal liability, the passage

of time since entry of the decision does not alter the characterization of the dispute. Even when

parties are wrapped in the "last vestiges" of a labor dispute, a fund lacks the legal basis under

MPPAA to assert withdrawal liability. *Central States, Southeast & Southwest Areas Pension

Fund v. T.I.M.E.-DC*, 1986 U.S. Dist. LEXIS 22280 (N.D. Tex. 1986).

E.  *Arbitrator Jaffe's Ruling Precludes The Fund From Assessing Withdrawal Liability For Years Involving 2004 and 2006.*

Collateral estoppel (sometimes referred to as "issue preclusion") involves honoring

previously decided issues that have been actually litigated and ensures that "once an issue is

actually and necessarily determined by a court of competent jurisdiction, that determination is

conclusive in subsequent suits based on a different cause of action involving a party to the prior

litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). The elements of collateral

estoppel are: (1) the issue sought to be precluded involves the same involved in the prior action;

(2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *La Preferida, Inc. v. Cerveceria Modelo*, S.A. de C.V., 914 F.2d 900, 906 (7th Cir. 1990). The fact that the issue may have been resolved in an arbitration does not affect the preclusive effect of any factual ruling. *Jorden v. National Guard Bureau*, 877 F.2d 245, 249 (3d Cir. Pa. 1989); *Trustees of Colorado Pipe Industry Pension Trust v. Howard Electrical & Mechanical, Inc.*, 909 F.2d 1379, 1386 (10th Cir. 1990). The fact that the fund now participating in this proceeding is part of a merged fund with the prior fund also makes no difference since the doctrine applies to parties' successors. *Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 149 (3d Cir. 2007).

Even if the fund could assert facts suggesting that the arbitrator was erroneous, the arbitrator may still be confirmed since the partial withdrawal liability assessment is barred by collateral estoppel. Each of the elements of collateral estoppel are present to bar the fund from disputing Arbitrator's Jaffe's finding that 2004 and 2005 involved exempt "labor dispute" years and cannot be used as a basis for assessment. First, the issue sought to be precluded, i.e., the application of the Section 1398(2) labor dispute exemption, involves the same issue involved in the Jaffe arbitration. Second, the application of the labor dispute exemption issue was actually decided and affirmed by the district court. Third, the issue was essential to the final judgment in the Jaffe arbitration. And fourth, the fund was fully represented in the Jaffe arbitration. Barring relitigation of a judicially decided issue in subsequent cases involving different claims is precisely the function of collateral estoppel. *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008).

F.	*The Fund's Assessment Is Untimely*.

Under the MPPAA, a plan sponsor is obligated ("*shall*") to notify the employer of the amount of any withdrawal liability, and the schedule of liability payments, "*[a]s soon as practicable* after an employer's complete or partial withdrawal." 29 USC §1399(b)(1). In this case, the fund sent notice of the withdrawal liability assessment to the hotel on February 12, 2009 (Jt. Ex. 6) even though the last and most recent testing year used in the assessment was 2006, a span of over two years. The fund waited over two calendar years to assess the partial withdrawal liability. Here, even if the fund could assert facts suggesting that the arbitrator was erroneous, the award should be sustained since the fund was untimely in its assessment.

G.	*Interest Rate and Calculations*.

On March 18, 2010 the arbitrator entered a supplemental ruling on interest as follows:

> The proposal of Congress Plaza to use the rate of interest applied by the NRF in assessing withdrawal liability is appropriate. The NRF has represented that this rate is 8%. Assuming the NRF can produce documentation confirming the use of 8%, that per annum rate shall be added to the interim payments which are to be returned to Congress Plaza. If no such documentation is forthcoming within fourteen days from today, the rate of interest shall be 9% per annum.

See Motion for Turnover Order, Exhibit 4 thereto, docket entry number 17. The 8% rate should be calculated from the time the hotel no longer had use of the money due to the improper assessment until the time that the money is actually returned to the hotel. The Code of Federal Regulations provides in relevant part that if the "schedule of payments established by the plan sponsor have resulted in an overpayment of withdrawal liability, the plan sponsor shall refund the overpayment *with interest* in a lump sum. The plan sponsor shall refund the overpayment *from the date of the overpayment to the date on which the overpayment is refunded to the employer*."

29 CFR §4219.3(d)(emphasis added). The overpayments currently set to be deposited in escrow should be awarded to the hotel with interest at an 8% rate calculated from the date of the overpayment was actually paid by the hotel to the date the payment is actually refunded to the hotel, and not the date the NRF deposits the money in escrow.

H.  *Congress Is Entitled To An Award Of Attorneys Fees And Costs*.

Under 29 USC §1451(e), this court is authorized to award the Congress Plaza Hotel reasonable attorney's fees and costs incurred in connection with this action.  A party that is required to defend an arbitrator's award in court, and prevails, is presumptively entitled to attorneys' fees under sec.1451(e). *Central States, Southeast & Southwest Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444 (7th Cir. 2000). Here, the Arbitrator's award is correct and well reasoned. The NRF has failed to support its argument any legal authority to support its contention. This court should affirm the arbitration award and award the hotel its attorneys fees and costs in this proceeding and the arbitration proceeding.

## III.  CONCLUSION.

For the above stated reasons, the Congress Plaza Hotel respectfully requests that the Arbitrator's Award of February 27, 2010 be affirmed and that it be awarded its attorneys fees, costs, and interest and for such further relief as the court deems equitable and just.

        Respectfully submitted,
        **Congress Plaza Hotel & Convention Center**


By:   /s/ Bradley Wartman
      One of its attorneys.


| | |
|---|---|
| Peter Andjelkovich, Esq. | Alan Levy |
| Bradley Wartman, Esq. | Lindner & Marsack |
| Peter Andjelkovich & Associates | 411 E. Wisconsin Ave Suite 1800 |
| 39 South LaSalle Street, Suite 200 | Milwaukee, WI 53202-4498 |
| Chicago, IL 60603 | 414-273-3910 |
| 312/782-8345 | |