**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| 520 S. MICHIGAN AVENUE ASSOCIATES, LTD.d/b/a THE CONGRESS PLAZA HOTEL & CONVENTION CENTER , | ) ) ) ) |
| Plaintiff, | ) |
| v. | ) Case No. 10 C 1395 |
| | ) |
| UNITE HERE National Retirement Fund, | ) Judge Kennelly |
| | ) |
| Defendant. | ) |

**CONGRESS PLAZA HOTEL'S RESPONSE TO**
**NRF'S STATEMENT OF MATERIAL AND ADDITIONAL FACTS**

NOW COMES Plaintiff/Counter-Defendant, 520 S. Michigan Avenue Associates, LTD.

d/b/a The Congress Plaza Hotel & Convention Center ("Congress Plaza Hotel"), by and through

its undersigned counsel, pursuant to Fed. R. Civ. P 56(b) and Rule 56.1(b) of the Rules of the

United States District Court for the Northern District of Illinois, and responds to the UNITE

HERE National Retirement Fund's ("NRF") Statement of Material and Additional Facts ("NRF's

Stmt.") as follows:

1. The UNITE HERE National Retirement Fund brings this action to modify
and/or vacate the arbitration award issued by Arbitrator Mark L. Irvings on February 27, 2010.
(**Exhibit A**, NRF's Answer to Complaint and Counterclaim, ¶1 of the Counterclaim; **Exhibit B**,
Congress Plaza Hotel's Answer to Counterclaim, ¶1.) A true and correct copy of Arbitrator
Irvings' award and opinion is attached to these Statement of Facts as **Exhibit C**.

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 1 of NRF's Stmt.

2. The NRF is a multiemployer employee pension benefit plan within the
meaning of Employee Retirement Income Security Act of 1974, *as amended* ("ERISA") Sections
3(2), (3), and (37), 29 U.S.C. §§ 1002(2), (3), and (37), and a defined benefit plan within the
meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), established and maintained for the purpose of
providing retirement and related benefits to eligible participants and beneficiaries. (**Exhibit A**,

¶ 5 of the Counterclaim.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 2 of NRF's Stmt.

3.      Congress Plaza Hotel was a contributing employer to the Hotel Employees and Restaurant Employees International Union Pension Fund (the "Hotel Fund") pursuant to a collective bargaining agreement between Congress Plaza Hotel and the Chicago Joint Executive Board of the Hotel Employees and Restaurant Employees International Union, AFL-CIO H.E.R.E., Local No. 1 (the "Union"). (Exhibit A, ¶8 of the Counterclaim; Exhibit B, ¶ 8; Exhibit D, p. 11, Jt. Ex. 3.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 3 of NRF's Stmt.

4.      Effective September 30, 2007, pursuant to a merger agreement, the Hotel Fund, along with two other pension funds, merged into the NRF (the "Merger"). (**Exhibit A**, ¶ 9 of the Counterclaim; **Exhibit B**, ¶ 9.; **Exhibit C**, p. 4, **Exhibit D**, pp. 93, 97, NRF Ex. 1.) As a result of the Merger, Congress Plaza Hotel became a contributing employer to the NRF. (**Exhibit A**, 19 of the Counterclaim; **Exhibit B**, ¶ 9.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 4 of NRF's Stmt.

5.      As a result of the severe underfunding the Hotel Fund brought to the merged entity, the approved merger agreement requires employers who originally contributed to the Hotel Fund to pay additional contributions to the NRF for a period of time for which those employers would receive substandard or no benefits. (**Exhibit C**, p.4, **Exhibit D**, pp. 93, 97, NRF Ex. 1.) The merger agreement also requires these employers to receive lower benefit accruals relative to the amount of contributions it paid to the NRF. (**Exhibit D**, pp. 93, 97, NRF Ex. 1.)

**RESPONSE**:

The Congress Plaza Hotel disputes the portion of the fund's statement "[t]he merger agreement

also requires these employers to receive lower benefit accruals relative to the amount of

contributions it paid to the NRF" since it is not specifically supported by the evidentiary

2

materials referenced in support of the statement. The Congress Plaza Hotel does not dispute the

remaining portion of paragraph 5 of the NRF's Stmt.

6.      The Merger Agreement provides a two-part method approved by the
Pension Benefit Guaranty Corporation in which an employer's withdrawal liability is calculated.
(**Exhibit C**, p. 5, **Exhibit D**, pp. 93, 97, NRF Ex. 1.) In the first part, the unfunded liabilities an
employer brought to the merged entity is amortized at five percent (5%) each year for the first
ten (10) years, and fifty percent (50%) for the eleventh year. (*Id.*) In the second part, the NRF
calculates the employer's proportionate share of the NRF's unfunded vested benefits post-Merger
pursuant to what is essentially a rolling five type formula. (*Id.*) An employer's withdrawal
liability is the sum of the two parts.

**RESPONSE**:

The Congress Plaza Hotel disputes the portion of the fund's statement ". . .pursuant to what is

essentially a rolling five type formula." and "[a]n employer's withdrawal liability is the sum of

the two parts" since the statements are not specifically supported by the evidentiary materials

referenced in support. The Congress Plaza Hotel does not dispute the remaining portion of

paragraph 6 of the NRF's Stmt.

7.      As of the date of the arbitration hearing, Congress Plaza Hotel and the
Union had not entered into a renewed collective bargaining agreement. (**Exhibit D**, 11/2/2009
Tamarin Tr. 77.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 7 of NRF's Stmt.

8.      During the course of the strike, Congress Plaza Hotel hired subcontractors
and other third parties to do work that was once performed by bargaining unit employees.
(**Exhibit D**, 11/2/2009 Souder Tr. 45.) Congress Plaza Hotel started using these subcontractors
and other third parties as early as the first day of the strike. (*Id.* at 48.)

**RESPONSE**:

The Congress Plaza Hotel contests the portion of the NRF's statement that the hotel used "other

third parties" to perform bargaining unit work. In the transcript pages cited for this statement, the

witness does not testify that the hotel used "other third parties," only that it used temporary

agencies. **Exhibit D**, 11/2/2009 Souder Tr. Pp. 37-45.  The Congress Plaza Hotel does not

dispute the remainder of paragraph 8 of NRF's Stmt.


       9.      On October 21, 2009, the NRF and Congress Plaza Hotel reached the
following stipulation with the assistance of Arbitrator Mark Irvings: "If Congress Hotel had
contributed to the NRF for employees of the subcontractors and third parties who were retained
during the strike which began June 2003 for performing work for Congress Hotel which was and
is bargaining unit work, Congress Hotel's contribution base units in 2004, 2005, and 2006 would
not have declined by 70%. This stipulation is simply a factual statement about which the parties
intend to each argue the legal ramifications, if any. This stipulation is not an admission by
Congress Hotel that it had any obligation to make contributions on the employees of these
subcontractors and third parties, nor is it an admission by the Fund that Congress Hotel did not
have such an obligation." (**Exhibit E**, Email from Arbitrator Irvings, 10/21/2009 Jt. Stip.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 9 of NRF's Stmt.

      10.     Congress Plaza Hotel has never hired, nor has it attempted to hire,
replacement employees to perform bargaining unit work. (**Exhibit D**, 11/2/2009 Souder Tr. 56-
57.)

**RESPONSE**:

The Congress Plaza Hotel disputes paragraph 10 of NRF's Stmt. Mr. Souder testified that union

employees had crossed the picket line and performed bargaining unit work and were paid directly

by the Congress Plaza Hotel. **Exhibit D**, 11/2/2009 Souder Tr. 56-57.

      11.     Congress Plaza Hotel continued to make pension contributions to the Hotel Fund
in accordance with the prior collective bargaining agreement until December 31, 2003 when the
Hotel Fund refused to accept Congress Plaza Hotel's pension contributions. (**Exhibit C**, p. 3,
**Exhibit D**, Jt. Ex. 1, p. 10.)

**RESPONSE**:

The Congress Plaza Hotel disputes paragraph 11 of NRF's Stmt. since the portion of the citation

referenced for the statement, Jt. Ex. 1, p. 10, does not support the statement. The portions of Jt.

Ex. 1 discussing the events leading to initial withdrawal liability assessment is contained in Jt.

Ex. 1, ¶¶10, 17-19. Contributions were made by the hotel on behalf of active employees who

continued working for the hotel and that the Hotel Fund had terminated the Congress Plaza Hotel

as a participant in the fund because no collective bargaining agreement had been consummated

between the union and the hotel by the deadline imposed by the fund. *Id*., **Exhibit C**, p. 3.

12.     Arbitrator Ira F. Jaffe ruled that that (*sic*) Congress Plaza Hotel did not
completely withdraw from the Hotel Fund and that the Hotel Fund's use of the Twelve Month
Rule violated ERISA Section 4218(2) (referred to as the "Labor Dispute Exception"). (**Exhibit
D**, Jt. Ex. 1, p. 24.)

**RESPONSE**:

The Congress Plaza Hotel disputes paragraph 12 of NRF's Stmt. since the portion of the citation

referenced for the statement, Jt. Ex. 1, p. 24, does not support the statement. Arbitrator Jaffe did

not rule at this portion of the cited opinion that the hotel did not "completely" withdraw from the

plan. The finding is referenced on page 28 of the opinion. Arbitrator Jaffe also ruled that the

assessment was inconsistent with Section 4203 of ERISA, 29 U.S.C. §1383. **Exhibit**

**D**, Jt. Ex. 1, p. 28.

13.     Subsequently, the Hotel Fund and Congress Plaza Hotel entered into an escrow
agreement dated November 29, 2005 and a settlement agreement dated June 22, 2006, under
which Congress Plaza Hotel agreed to pay to the Hotel Fund contributions relating to the period
from January 1, 2004 through 2006. (**Exhibit D**, pp. 11 and 13, Jt. Ex. 5 and Jt. Ex. 13.)

**RESPONSE**:

The Congress Plaza Hotel disputes paragraph 13 of NRF's Stmt. since the portion of the citation

referenced for the statement, Jt. Ex. 1, p. 24, does not support the statement that the Congress

Plaza Hotel agreed to pay to the Hotel Fund contributions relating to the period from January 1,

5

2004 through 2006. The June 22, 2006 agreement states that the fund had audited the hotel's

payroll records through May 19, 2006 and that the parties will reconcile the required pension

contributions with the remaining withdrawal liability payments and interest due to the hotel.

14.     In January 2007, the Union and Congress Plaza Hotel entered into an agreement
extending Congress Plaza Hotel's pension contribution obligations to the Hotel Fund
pursuant to the prior collective bargaining agreement, which was effective from January 1, 1998
through December 31, 2002, to December 31, 2007. (**Exhibit C**, p.4; **Exhibit D**, p. 11, Jt. Ex.
4.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 14 of NRF's Stmt.

15.     The only term or condition of employment that Congress Plaza Hotel
agreed to change and implement following the expiration of the collective bargaining agreement
was to continue making pension contributions to the NRF at increased rates. (**Exhibit D**,
11/2/2009 Souder Tr. 57-59.)

**RESPONSE**:

The Congress Plaza Hotel disputes paragraph 15 of NRF's Stmt. Mr. Souder testifies that there

were points in the negotiations that the parties had come to agreement on but would not be put

into place until an entire agreement was reached. **Exhibit D**,11/2/2009 Souder Tr., p. 58.

16.     Following the Merger, the NRF and the Hotel Employees and Restaurant
Employees International Union Welfare Fund, located in Aurora, Illinois, entered into an
agreement pursuant to which that office would assist in the NRF's administration. (**Exhibit D**,
11/2/2009 Rust Tr. 89-90, 137.) The Aurora Office's responsibilities included providing
information to the NRF regarding withdrawal liability, legal, and delinquent contribution
situations that might arise with respect to contributing employers of the former Hotel Fund. (*Id*.)

**RESPONSE**:

The Congress Plaza Hotel does not paragraph 16 of NRF's Stmt.

17.     In October 2008, after reviewing audit information, Dharma Patel at the Aurora
Office contacted Richard Rust, the NRF's Fund Manager, after noticing that Congress Plaza
Hotel's contribution levels had declined significantly in recent years. (**Exhibit C**, pp. 6, 23.) Ms.

Patel suggested that Mr. Rust determine whether Congress Plaza Hotel incurred a partial withdrawal from the NRF. (*Id*.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 17 of NRF's Stmt.

18.     The NRF determined that Congress Plaza Hotel incurred the partial withdrawal liability as of December 31, 2006. (**Exhibit C**, p.7; **Exhibit D**, p. 12, Jt. Ex. 6.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 18 of NRF's Stmt.

19.     Congress Plaza Hotel's withdrawal liability percentage is 87.43%. (**Exhibit D**, p. 12, Jt. Ex. 6.)

**RESPONSE**:

The Congress Plaza Hotel does dispute paragraph 19 of NRF's Stmt. The cited portion of the

record refers to a percentage as calculated by the fund actuary.

20.     The calculation of the partial withdrawal liability was calculated, in part, on the contribution base units for 2007, which was the plan year following the date of the partial withdrawal. (**Exhibit D**, p. 12, Jt. Ex. 6.)

**RESPONSE**:

The Congress Plaza Hotel does dispute paragraph 20 of NRF's Stmt. The assessment calculations

show that the testing years used by the actuary for the 2006 test to include only years 2006, 2005,

and 2004. Jt. Ex. 6, p. 2.

21.     On March 18, 2009, legal counsel for Congress Plaza Hotel submitted to the NRF Trustees a Request for Review. (**Exhibit C**, p.8; **Exhibit D**, p. 12, Jt. Exhibit 7.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 21 of NRF's Stmt.

22.     Mr. Rust submitted Congress Plaza Hotel's Request for Review to the NRF legal counsel. (**Exhibit C**, pp. 8, 24.) The NRFs legal counsel prepared a letter that responded and rejected each of Congress Plaza Hotel's responses. (**Exhibit C**, pp.8, 24; **Exhibit D**, p. 12, Jt. Exhibit 8.) The NRF's response letter specifically noted that Congress Plaza Hotel was not protected by the Labor Dispute Exception because it had not suspended contributions due to a labor dispute and that Congress Plaza Hotel was continuing to make all required contributions. (**Exhibit C**, p. 8; **Exhibit D**, p. 12, Jt. Exhibit 8.) Mr. Rust submitted NRF's legal counsels response to the NRF's Settlement Committee for approval, which was given, and NRF's legal counsel sent the response to Congress Plaza Hotel's Request for Review on June 3, 2009. (**Exhibit C**, pp. 8, 24; **Exhibit D**, p. 12, Jt. Exhibit 8.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 22 of NRF's Stmt.

23.     Henry Tamarin is not on the NRF's Settlement Committee, nor is any other former trustee of the Hotel Fund. (**Exhibit C**, p. 5; **Exhibit D**, 11/2/2009 Tamarin Tr. 81.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 23 of NRF's Stmt.

24.     The NRF submitted an answering statement to Congress Plaza Hotel's demand for arbitration. In the answering statement, the NRF maintained its position that the Labor Dispute Exception did not apply because there was no suspension of contributions under the statute and that the partial withdrawal liability assessment was based on events subsequent to and distinct from the issues addressed in the Previous Arbitration, Arbitrator Jaffe's ruling, and/or the January Opinion. (**Exhibit D**, p. 12, Jt. Exhibit 10.)

**RESPONSE**:

The Congress Plaza Hotel disputes paragraph 24 of NRF's Stmt. in that it is an incomplete

summary of its answering statement but does not dispute that these claims were contained in the

statement.

25.     Arbitrator Irvings found that there has not been a single reported arbitration or court case interpreting the nexus between the partial withdrawal defitinition (*sic*) found in 29 U.S.C. §1385 and the Labor Dispute Exception. (**Exhibit C**, p. 18.)

**RESPONSE**:

The Congress Plaza Hotel disputes and objects to paragraph 25 of NRF's Stmt. in that it is not a

statement of fact as required under local rule 56.1(b)(3)(C) and should be stricken.

     26.    Arbitrator Irvings found that this case presented a novel question of law and that the NRF was not disregarding well-established precedent when it assessed partial withdrawal liability. (*Id*. at 22.)

**RESPONSE**:

The Congress Plaza Hotel disputes and objects to paragraph 26 of NRF's Stmt. in that it is not a

statement of fact as required under local rule 56.1(b)(3)(C) and should be stricken.

     27.    Arbitrator Irvings found that given its fiduciary obligation to protect the financial viability of the fund, the NRF was certainly entitled to seek a ruling on a wholly unsettled legal question. (*Id*.)

**RESPONSE**:

The Congress Plaza Hotel disputes and objects to paragraph 27 of NRF's Stmt. in that it is not a

statement of fact as required under local rule 56.1(b)(3)(C) and should be stricken.

     28.    Arbitrator Irvings found that while there had been an attempt by the Hotel Fund to assess complete withdrawal liability, the NRF had not been part of that proceeding. (*Id*.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 28 of NRF's Stmt.

     29.    Arbitrator Irvings found that Arbitrator Jaffe's award never addressed the issues raised in this case. (*Id*.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 29 of NRF's Stmt.

     30.    Arbitrator Irvings found that there was absolutely no proof that the assessment of withdrawal liability against Congress Plaza Hotel was precipitated by Union President Henry Tamarin. (*Id*. at 22, 24.)

**RESPONSE**:

The Congress Plaza Hotel disputes paragraph 30 of NRF's Stmt. Union President Henry Tamarin

testified that he is a trustee of the NRF and that he knew that the fund was pursuing a withdrawal

liability assessment. **Exhibit D**, pp. 72-75.

31.     Arbitrator Irvings found that prior to the Merger, Mr. Rust had no dealings
with nor responsibility for the contribution collection from Congress Plaza Hotel and that Mr.
Rust had no reason to consider whether Congress Plaza Hotel might have partially withdrawn at
the end of 2006. (*Id.* at 23.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 31 of NRF's Stmt.

32.     Arbitrator Irvings found that given that the audit, which was on-going in 2008,
was the precipitating event, the lag in assessing withdrawal liability is understandable and that 29
U.S.C. § 1399 requires only that a plan notify a employer "as soon as practicable" after a partial
withdrawal "of the amount of liability." (*Id.*) Arbitrator Irvings found that this section does not
appear to impose a requirement of notification and that taking into account the administrative
burdens imposed by the Merger, and the need to determine actual liability, the delay in notifying
Congress Plaza Hotel was not unreasonable. (*Id.*)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 32 of NRF's Stmt.

33.     The Arbitrator found that while Congress Plaza Hotel views the Hotel Fund, the
NRF, and the Union as a unified monolith, the reality is that each entity has distinct
governance and interests. (*Id.*)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 33 of NRF's Stmt.

34.     The Arbitrator found that it was not incomprehensible that Mr. Rust had
not awareness of the Labor Dispute Exception and that there was no evidence that he had ever
encountered the Labor Dispute Exception. (*Id.* at 23-24.) The Arbitrator further ruled that since
Arbitrator Jaffe's award was issued before the Merger, there was no reason for Mr. Rust to have
been aware of the Labor Dispute Exception until the Congress Plaza Hotel submitted its request
for Review. (*Id.* at 24.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 34 of NRF's Stmt.

35.     The Arbitrator ruled that while Congress Plaza Hotel did not find the NRF legal counsel's theories persuasive, they were plausible positions on unsettled law. (*Id.*)

**RESPONSE**:

The Congress Plaza Hotel disputes and objects to paragraph 35 of NRF's Stmt. in that it is not a

statement of fact as required under local rule 56.1(b)(3)(C) and should be stricken.

36.     Arbitrator Irvings rejected Congress Plaza Hotel's request for the award of reasonable attorney's fees finding that the NRF's assessment of partial withdrawal liability was not done in bad faith. (*Id.*)

**RESPONSE**:

The Congress Plaza Hotel objects to NRF's statement that the arbitrator found that the NRF's

assessment of partial withdrawal liability was not done in bad faith as not being supported by the

citation.  The Congress Plaza Hotel does not dispute the remaining statements within paragraph

36 of NRF's Stmt.

37.     The Arbitrator found that by utilizing temporary employees, instead of directly hiring replacement workers, Congress Plaza Hotel is not paying into the NRF at the elevated rate charged the former participating employers in the Hotel Fund to offset the underfunding of that plan at the time of the Merger. (*Id.* at 19.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 37 of NRF's Stmt.

38.     The Arbitrator found that as the strike stretches on, it is erasing the amortized Hotel Fund withdrawal liability that would be assessed if it withdrew from the NRF. (*Id.*) If the strike goes on long enough, Congress Plaza Hotel would be able to withdraw without having paid any of the unfunded vested liability the Hotel Fund brought to the merged entity. (*Id.*) The onus for these liabilities would shift to other contributing employers of the NRF. (*Id.*)

11

**RESPONSE**:

The Congress Plaza Hotel objects to the portion of the NRF's statement that the arbitrator found that "the Hotel Fund brought to the merged entity" as not being supported by the citation.  The Congress Plaza Hotel does not dispute the remaining statements within paragraph 36 of NRF's Stmt.

39.     Arbitrator Irvings found that there is no evidence that the United States Congress ever envisioned this kind of scenario when it included the Labor Dispute Exception in the Multiemployer Pension Plan Amendments Act of 1980 and that there is no indication that it was anticipated that an employer could maintain its operations for more than six years without ever hiring replacements, but rather using the device of temporary staffing agencies. (*Id*. at 19-20.)

**RESPONSE**:

The Congress Plaza Hotel does not dispute paragraph 39 of NRF's Stmt.

Respectfully submitted,
**Congress Plaza Hotel & Convention Center**

By:   /s/ Bradley Wartman
         One of its attorneys.

Peter Andjelkovich, Esq.                         Alan Levy
Bradley Wartman, Esq.                           Lindner & Marsack
Peter Andjelkovich & Associates            411 E. Wisconsin Ave Suite 1800
39 South LaSalle Street, Suite 200         Milwaukee, WI 53202-4498
Chicago, IL 60603                                  414-273-3910
312/782-8345