IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| 520 S. MICHIGAN AVENUE ASSOCIATES, LTD. d/b/a THE CONGRESS PLAZA HOTEL & CONVENTION CENTER,<br><br>Plaintiff,<br><br>vs.<br><br>UNITE HERE NATIONAL RETIREMENT FUND,<br><br>Defendant. | Case No. 10 C 1395 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

520 South Michigan Avenue Associates, Ltd., d/b/a The Congress Plaza Hotel & Convention Center (Congress Plaza), was a party to a collective bargaining agreement that obligated it to make payments into a pension fund on behalf of bargaining unit employees. The pension fund is managed by Unite Here National Retirement Fund (NRF).

In 2002, the last collective bargaining agreement between the hotel and the union representing bargaining unit employees expired. Employees in the bargaining unit have been on strike at Congress Plaza since 2003. Congress Plaza has not made contributions to the pension fund on behalf of striking employees.

In 2007, NRF assessed partial withdrawal liability against Congress Plaza under the Employee Retirement Income Security Act (ERISA) due to the reduction in its

contributions to the pension fund. Congress Plaza argued that NRF could not impose withdrawal liability because it had suspended payments to the pension fund as a result of a labor dispute. Congress Plaza contended this brought it within the "labor dispute" exception to withdrawal liability contained in 29 U.S.C. § 1398. The dispute was litigated before an arbitrator, who ruled that Congress Plaza's actions fell within ERISA's labor dispute exception to withdrawal liability.

Congress Plaza has sued NRF to enforce the decision rendered by an arbitrator on February 27, 2010. Congress Plaza has moved for summary judgment, and NRF has cross-moved for summary judgment, arguing that the arbitrator made an error of law when he determined that NRF could not assess partial withdrawal liability on Congress Plaza. For the reasons stated below, the Court grants summary judgment in favor of Congress Plaza.

## Background

Prior to 2003, Congress Plaza was a party to a collective bargaining agreement with HEREIU, Local 1 (a predecessor to NRF). Under the terms of the agreement, Congress Plaza was required to make contributions to a pension fund on behalf of its employees that were part of the bargaining unit. That employment agreement expired in December 2002. Since June 2003, Congress Plaza and the union have been involved in a labor dispute, and the hotel's union employees have been on strike. Congress Plaza has not hired workers to permanently replace the striking workers. Instead, it has relied on temporary employees provided by staffing companies. Congress Plaza has not made pension contributions on behalf of the striking workers or the temporary replacement workers. This has resulted in a substantial reduction in its

contributions to the pension fund.

In January 2004, the pension fund informed Congress Plaza that it was assessing more than two million dollars in liability for Congress Plaza's complete withdrawal from the pension plan, due to its failure to provide an acceptable collective bargaining agreement within twelve months of the expiration of the old one. The fund invoked the plan's so-called "twelve month" rule. Congress Plaza disputed the assessment of withdrawal liability, and the dispute went to arbitration. On May 20, 2005, an arbitrator ruled that the pension fund could not impose complete withdrawal liability on Congress Plaza because its actions fell under ERISA's labor dispute exception, which prohibits the assessment of withdrawal liability if "an employer suspends contributions under the plan during a labor dispute involving its employees." 29 U.S.C. §1398(2).

In 2007, the HEREIU Local 1 pension fund merged into the NRF. In February 2009, the NRF's manager notified Congress Plaza that it had determined that the hotel's contributions to the fund during had decreased by more than seventy percent and that NRF was therefore assessing partial withdrawal liability under 29 U.S.C. § 1385(a)(1). Congress Plaza disputed the assessment, and the matter went to arbitration. On February 27, 2010, the arbitrator, Mark Irvings, ruled that the assessment of withdrawal liability was improper because the reduction in payments fell within the ERISA labor dispute exception. The arbitrator's award directed the NRF to refund with interest all withdrawal liability payments Congress Plaza had made while the dispute was pending.

On March 2, 2010, Congress Plaza filed this action, seeking to enforce Arbitrator

Irvings' award. On May 18, 2010, in response to a turnover motion filed by Congress Plaza, the Court ordered NRF to deposit into an interest-bearing escrow account $421,187.76 that Congress Plaza had made in interim withdrawal liability payments.

Congress Plaza has moved for summary judgment on its claim to enforce the arbitration award. NRF has cross-moved for summary judgment, arguing that the arbitrator made a mistake of law when he determined that Congress Plaza had suspended its contributions as a result of a labor dispute. For the reasons stated below, the Court grants Congress Plaza's motion and denies NRF's.

## Discussion

**A.  Review of the arbitrator's decision**

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2009). Arbitration awards under ERISA are enforced in federal courts in the same manner as arbitration awards under the Federal Arbitration Act, 9 U.S.C. § 1. *See* 29 U.S.C. § 1401(b)(3). A court presumes that an arbitrator's findings of fact are correct, a presumption that is rebutted "only by a clear preponderance of the evidence." 29 U.S.C. § 1401(c). For purposes of district court review, this "clear preponderance of the evidence" standard is treated as being substantively the same as the familiar "clearly erroneous" standard. *Cent. States, SE and SW Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 804 (7th Cir. 1999). A court reviews *de novo* the arbitrator's conclusions of law. *Id.* at 805.

ERISA provides that if an employer completely or partially withdraws from an ERISA benefit plan, the employer is liable to the plan for its allocable amount of unfunded vested benefits. 29 U.S.C. § 1381. ERISA also provides, however, that an employer shall not be considered to have withdrawn from a plan if it "suspends contributions under the plan during a labor dispute involving its employees." 29 U.S.C. § 1398(2). In his February 2010 ruling, Arbitrator Irvings found that Congress Plaza had not partially withdrawn from the pension plan because its reduction in contributions to the plan was a result of the labor dispute between the hotel and the union.

Congress Plaza argues that the Court should affirm the arbitrator's ruling. It argues that the ruling that it had suspended its contributions as a result of the labor dispute was an application of the law to the facts and thus the Court should review it under the clearly erroneous standard. Congress Plaza maintains that the ruling was not clearly erroneous.

NRF argues that the arbitrator's decision that the labor dispute exception applies was a conclusion of law and that the Court should review it *de novo.* It argues that the arbitrator made an error of law when he determined that Congress Plaza had "suspended" contributions, as required under the labor dispute exception, because the hotel continued make pension contributions on behalf of certain employees who crossed the picket line and returned to work. These payments, NRF argues, demonstrate that Congress Plaza did not entirely suspend its contributions to the pension fund as required by 29 U.S.C. § 1398(2) but rather only reduced them. Therefore, NRF argues, the labor dispute exception does not apply, and Congress Plaza is liable for partial withdrawal from the plan.

5

The parties dispute the appropriate standard of review. Because the Court would uphold the arbitrator's decision under the more stringent *de novo* standard, the Court assumes without deciding that this standard applies.

In his February 27 decision, Arbitrator Irvings first determined that "[t]here is no dispute that if every member of the bargaining unit honors the picket line. . . there will be a complete suspension of pension contributions, . . . and no assessment of withdrawal liability can be made." Arbitrator's Feb. 27 Op. (docket no. 1, Ex. A) at 20. The arbitrator then noted that the National Labor Relations Act requires employers to make pension contributions on behalf of any bargaining unit employees that cross the picket line and return to work. *Id.* For this reason, the arbitrator determined, Congress Plaza was obligated to continue to make pension contributions on behalf of those bargaining unit employees who continued to work during the strike. Thus Congress Plaza did not entirely cease making contributions into the plan. These payments, NRF argues, mean that Congress Plaza did not fully "suspend" its contributions to the plan and thus that it does not qualify for the labor dispute exception.

Arbitrator Irvings disagreed with NRF's argument. He concluded that "it is wholly illogical to interpret § 1398 to find that if the employer makes no contributions to the pension fund, the employer is exempt from withdrawal liability; but if the employer makes contributions for the small percentage of bargaining unit employees who are working, but not for the still striking employees, the employer loses the labor dispute exception and faces partial withdrawal liability." *Id*. Arbitrator Irvings concluded:

> the most reasonable interpretation of the phrase *suspends contributions* is temporal. Where the employer stops making contributions because an employee is not working because of a labor dispute, and intends to resume

> making contributions for that employee as soon as the employee returns to work, there is a suspension of contribution. Under § 1398, such a suspension of contributions cannot form the basis of either a complete or a partial withdrawal.

*Id.* at 20-21 (emphasis in original).

The Court agrees with the arbitrator's determination that Congress Plaza's actions fall within the labor dispute exception. Though NRF points to various dictionary definitions of the word "suspend" that suggest an action is suspended only if it is stopped entirely, the Court agrees with the arbitrator that in this context, use of such a definition would be illogical. Withdrawal liability is not limited to employers who completely cease making contributions to pension plans; 29 U.S.C. § 1385(a)(1) provides for partial withdrawal liability if "there is a 70-percent contribution decline." 29 U.S.C. § 1385(a)(1). Section 1398, which establishes the labor dispute exception to withdrawal liability, makes no distinction between complete withdrawal liability and partial withdrawal liability. Reading these two sections together, the logical meaning of "suspended" does not require complete cessation of contribution but only that the employer stop making contributions for those employees involved in the labor dispute. Adopting NRF's urged definition of "suspend" would mean that the labor dispute exception does not apply to assessments of partial withdrawal liability. Nothing in the statute suggests that the exception was meant to apply only to complete withdrawals, and NRF has cited no authority so suggesting. The Court therefore concludes that the arbitrator's determination that the labor dispute exception applies was correct.

The arbitrator's ruling also included a finding that the reduction of payments by Congress Plaza was a result of the labor dispute. NRF disputes this as well, arguing that the reduction was not a result of the strike but rather was the result of Congress

Plaza's decision to hire contract workers instead of permanently replacing strike workers. This was a finding of fact that the Court will overturn only if clearly erroneous, which it is not. In any event, the Court concludes that NRF is, at best, splitting hairs. Congress Plaza would not have had occasion to decide between contract workers and permanent replacement workers had there not been a labor dispute, and therefore its decision to hire temporary workers is a direct result of the strike.

The Court rules that Congress Plaza suspended payments to the pension fund as a result of its labor dispute with the union and therefore did not partially withdraw from the plan under the labor dispute exception in 29 U.S.C. § 1398. The Court grants Congress Plaza's motion for summary judgment, denies NRF's motion for summary judgment, and orders NRF to refund all partial withdrawal liability payments Congress Plaza had made while the dispute over withdrawal liability was pending, as directed by the arbitration award.

**B.**     **Interest rate**

From the time NRF assessed partial withdrawal liability on Congress Plaza, Congress Plaza has been required to make partial withdrawal liability payments to NRF. The arbitrator's award directed NRF to refund those payments to Congress Plaza, with interest. He used an interest rate of eight percent, which was the same rate NRF had used in assessing withdrawal liability. Congress Plaza now argues that it is entitled to eight percent interest on the amount of the payments from "the time the hotel no longer had use of the money due to the improper assessment until the time that the money is actually returned to the hotel." Pl.'s Mem. in Support of Summ. J. at 13.

That is not the appropriate time line. Congress Plaza is entitled to eight percent

interest starting on the dates that NRF actually received the funds, not the dates that Congress Plaza signed the checks. In addition, the eight percent interest rate should not extend until the date the funds are actually returned to Congress Plaza. On May 18, 2010, the Court ordered NRF to place the funds into an escrow account. The Court did so as a result of Congress Plaza's motion for a turnover order, in which it asked the Court to take the funds from NRF and put them into escrow. It would be unjust to require NRF to pay interest at eight percent for the period of time when the funds were in escrow, earning a lower rate of interest, when it was Congress Plaza, not NRF, that insisted the funds be placed in escrow in the first place. Congress Plaza is entitled to eight percent interest through the date when the funds were placed in escrow but is entitled only to whatever interest the funds earned in escrow from the date they were placed in escrow until the date they are actually returned to Congress Plaza. The parties will be required to provide this figure to the Court.

**C.     Attorney's fees and costs**

Finally, Congress Plaza argues that it is entitled to attorney's fees and costs incurred in connection with this action. ERISA provides that "a court may award all or a portion of the costs and expenses incurred in connection with [an action], including reasonable attorney's fees, to the prevailing party." 29 U.S.C. § 1451. The Seventh Circuit has held that in the ERISA context, "the prevailing party is entitled to fees unless the loser can show that its position was 'substantially justified,' a higher hurdle than 'not frivolous.'" *Cont'l Can Co. v. Chi. Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund*, 921 F.2d 126, 127 (7th Cir. 1990).

Arbitrator Irvings denied a similar request for fees from Congress Plaza, finding

that the case presented "a novel question of law," and that "[a]t most, [Congress Plaza] was able to cite one footnote in a single district court decision in thirty years which was arguably consistent, although not directly on point, with its reading of the statute." Arbitrator's Feb. 27 Op. at 22.

The Court agrees with the arbitrator that this case presents a question of statutory interpretation that appears to be novel. Though the Court ultimately did not agree with NRF's reading of the statute, it also concludes that NRF was "substantially justified" in pressing before this Court the question of the meaning of "suspended" in the context of the labor dispute exception. The Court therefore denies Congress Plaza's request for attorney's fees and costs.

## Conclusion

For the reasons stated above, the Court grants summary judgment in favor of Congress Plaza. NRF is directed to return to Congress Plaza all payments that were made based on the assessment of partial withdrawal liability, with interest as described in section B of this opinion. The parties are directed to confer regarding the appropriate calculation and are to present a proposed judgment order to the Court no later than September 22, 2010.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 17, 2010